McFarland, J.,
delivered the opinion of the Court.
Pritchard brought this action against R. M. Mason and E. M. Apperson, as maker and endorser of the following note:
“$550. St. Louis, August 24, 1866.
“ Six months after date I promise to pay E. M. Apperson & Co. five hundred and fifty dollars for value received. Negotiable and payable without defalcation or discount at the -. R. M. Mason,
“ Capt. Steamer Southerner.
“Endorsed:
“ E. M. Apperson & Co.”
The certificate of the Notary Public shows that at the maturity of the note he made diligent inquiry in the City of St. Louis, and could find no such person as R. M. Mason; that he made demand at- the most public places and the principal banks, and payment being refused the same was protested and notice given. The proof shows that Mason, at the date of the note, as well as at its maturity, resided in Shelby county, Tennessee, some eight or nine 'miles from the City of Memphis; that he was Captain of the steamer “Southerner;” and that from August, 1866, until some time in January, 1867, he was engaged in the trade between Memphis and New Orleans. E. M. Apperson & Co. were doing business in Memphis during this time. The note in question was endorsed by Apperson & Co. at Memphis, and by them forwarded to St. Louis to one Smith, Captain of the Steamboat *795 Packet Company, to cover the premium on certain, policies of insurance upon the Boat.
The question upon these facts is, Was the certificate of the Notary, of diligent search and demand in. St. Louis, sufficient to charge the endorser? The-Circuit Judge instructed the jury, in substance, that the note having been dated at St. Louis, it was prima-faoie evidence that the maker resided there: that it was the place of payment, as contemplated by the-parties; that demand there was sufficient, unless it be-shown that the holder knew the maker resided elsewhere ; and that unless the defendants proved that the plaintiff came to t'he possession of the note a sufficient length of time before its maturity to enable-him to make inquiry as to the maker’s residence, the» the duty would not be imposed upon him.
The general rule, that demand must be made at the maker’s residence- or place, of business, in order to charge the endorser, is well settled. It is true that the date of the note is prima faoie evidence of the maker’s residence, but this is only prima facie evidence, and in all cases due diligence must be exercised by the holder to discover the maker’s residence- or place of business. 3 Kent 96, and authorities-cited.
It .has been held that if, after the making and' endorsement of the note, the maker absconds or moves-out of the State in which the note was made and-negotiated, the holder is not bound to follow the maker into another State to make the demand. Anderson v. Drake, 14 Johnson.
*796 If, on the other hand, the maker, after the note is negotiated, move to another qilace in the same State, reasonable diligence must be used to discover his residence, and make demand there. Sto. on Prom. Notes, Sec. 236.
Judge Story, in his work on Promissory Notes, uses this language: “It seems also that if the maker of a promissory note resides and has his domicil in one State, and delivers a promissory note in another State, it will be sufficient for the holder to demand payment thereof at the place where it is dated, if the maker cannot, personally, upon reasonable inquiries, be found within the State, and has no known place of business there.” For this the author cites the case of Hepburn v. Toledano, 10 Miller.
In the case of Taylor v. Snyder, 3 Denio, it was held that where a resident of Florida made and dated his note at Troy, New York, and still continued to reside in Florida, and this was known to the holder, demand must be made at the maker’s residence in Florida.
In this latter case the doctrine laid down in Story above quoted is referred to and its correctness denied, and it is maintained that Judge Story did not state the doctrine upon his own authority; but upon the authority of the case in 10 Miller. And the opinion is intimated that the latter was a case where the maker had changed his residence after the note was made.
In this case, although the note is dated at St. Louis, it does not certainly appear where it was actually made; but it, perhaps, appears with reasonable *797 certainty that it was actually made at Memphis. The' note was made to cover the insurance of the steamer “Southerner,” of which Mason, the maker, was Captain, and was probably made for the accommodation of Mason. It is affirmatively proven that it was endorsed by Apperson & Co. at Memphis — and no place of payment being fixed in the note — and as the-proof indicates that Mason then had a known and fixed residence in Shelby county — the implied contract which the law attaches to the endorsement is, that the endorsers will pay the note, provided payment is demanded of the maker and refused, and notice given, of this failure. And at this time there was nothing to indicate that a different place of payment was contemplated than that fixed by the general rule of law in such cases, that is, the maker’s residence or place of business. This must be so, unless the date at St. Louis is equivalent to fixing that as the place of payment. This, however, will not be contended for.
The question then remains, Was the holder excused from making demand at the maker’s residence for want of time? that is, because it does not appear that he received it in sufficient time before its maturity to enable him to make the necessary inquiries?' And was there any thing to put him upon inquiry and to enable him to ascertain the holder’s residence?'
The fact that the maker signs the note R. M. Mason, “ Captain Steamer Southerner,” and also that the residence of the endorsers seems to have been known, — as we infer from the fact' that notice was correctly mailed to them, — was, perhaps, sufficient to *798 have enabled the holder to ascertain the maker’s residence, or at least to have put him upon inquiry, unless excused for the reason stated.
In Story on Prom. Notes, Sec. 265, it is said, in regard to receiving the note so near its maturity as that it becomes impracticable to present it in due .season, that “it is obvious that this excuse can properly apply only as between the immediate parties who have transferred and received the note within such brief period.” For as to other antecedent parties, who transferred it long enough to have a due presentment made, they have a right, as to all subsequent holders, to stand upon the very terms of their original contract,” and it is the folly of such holders to take the note so late as that they cannot fulfill the obligations imposed by law upon them.” It will, perhaps, also be found from this and other authorities, that in such cases, as between parties who have transferred and received a note so near its maturity as to make due presentment at maturity impracticable, that this does not effect the question as to the place of presentment, or excuse a presentment altogether, but only as between these parties, allows a presentment and demand to be made within a reasonable time thereafter.
"We, therefore, hold that to have charged the endorser, payment of this note should, at maturity, have been demanded of the maker at his residence or place of business, if the same was known or could have been ascertained upon reasonable diligence by the holder; provided, that this residence was a fixed and *799 known residence, and was the same at the date of the note; and provided, that when Apperson & Co. endorsed the note it was not so near its maturity .as not to have left reasonable time to ascertain the maker’s residence. If so, then, as to them, further reasonable time should have been allowed to make the demand.
It would. seem from the record that the note was endorsed by Apperson & Co. at or about its date—some six months before its maturity.
If Apperson & Co. endorsed the note a sufficient length of time before its . maturity to have enabled, their endorsee to have made the necessary inquiry as to the maker’s. residence, then, as to them, it is immaterial when the plaintiff received it.
For these errors the judgment must be reversed.